## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

| | | |
|---|---|---|
| HEATHER CURRAN, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 8:24-cv-00402-AAQ |
| | * | |
| MOM'S ORGANIC MARKET, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**\*\*\*\*\*\***

### MEMORANDUM OPINION AND ORDER

This is a case alleging that a grocer discriminated against one of its employees because of her race. Plaintiff Heather Curran, a "non-Hispanic, white female citizen of the United States," alleges that Defendants MOM's Organic Market and Reina Hernandez discriminated against her because she is not Hispanic. ECF No. 1 ¶¶ 1, 7. Specifically, she advances claims under 42 U.S.C. § 1981 for race discrimination, hostile work environment, and retaliation. Defendants, in turn, have moved to dismiss Plaintiff's Complaint in its entirety with prejudice. ECF No. 15. For the reasons discussed below, the Court grants the Motion, in part, and denies the Motion, in part.

### BACKGROUND

Plaintiff Heather Curran began working at Defendant MOM's Organic Market's College Park Store as an Operations Manager-in-Training on April 23, 2019.[1] ECF No. 1 ¶ 14. Plaintiff's

---

[1] Because the case is currently before the Court on Defendant's Motion to Dismiss, the Court accepts

responsibilities included, among other things, managing other employees, opening and closing the market, responding to supply orders, managing store repairs, and planning events.  *Id.* ¶ 16.

Defendant Hernandez—a Hispanic woman—was Plaintiff's supervisor for the entirety of Plaintiff's time at MOM's Organic, *id.* ¶ 17, from April 2019 until February 2020 (the relevant period), *id.* ¶¶ 14, 123.  Throughout the relevant period, Defendant Hernandez held the most senior position at the College Park store and possessed decision-making authority over employment decisions including hiring, firing, employee discipline, and employee hours and assignments.  *Id.* ¶ 17.  Plaintiff alleges that she quickly noticed that Defendant Hernandez "openly favored Hispanic employees," and treated non-Hispanic employees "less favorably."  *Id.* ¶ 19.

On June 10, 2019, Plaintiff's father passed away.  *Id.* ¶ 22.  Prior to his passing, Plaintiff attempted CPR.  *Id.*  In doing so, Plaintiff injured her wrist.  *Id.* ¶ 23.  That same day, Plaintiff informed the operations manager at her store and Defendant Hernandez that her father had passed and requested time off to grieve and handle funeral preparations.  *Id.* ¶ 24.  She also informed them of her wrist injury.  *Id.*  Defendant Hernandez allegedly responded to Plaintiff with a "lack of empathy" and did not communicate Defendant MOM's Organic's bereavement policy, which applied to Plaintiff.  *Id.* ¶ 25.

Plaintiff returned to work on June 20, 2019.  *Id.* ¶ 28.  Soon after her return, Defendant Hernandez placed Plaintiff on Bakery Duty.  *Id.* ¶ 31.  Bakery Duty, which demands long hours and significant physical exertion, was not a Manager-in-Training responsibility or assignment.  *Id.* ¶¶ 31-32. Further, according to Plaintiff, Defendant Hernandez had never assigned a Hispanic Manger-in-

---

all well-pled allegations as true for the purpose of deciding this Motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Training to Bakery Duty. *Id.* ¶ 32. Plaintiff reminded Defendant Hernandez of her injured wrist and requested an assignment in-line with her Manager-in-Training responsibilities, *id.* ¶ 33-35, but Defendant Hernandez refused, telling Plaintiff to do her best, *id.* ¶ 36.

After first assigning Plaintiff to Bakery Duty in June 2019, Defendant Hernandez continued to assign Plaintiff to Bakery Duty through February 2020. *Id.* ¶ 122. These assignments would often be last-minute: Defendant Hernandez would call Plaintiff in the middle of the night at least two to three times per week instructing her to cover the Bakery Duty shift at 4:00 A.M. the following morning without notice. *Id.* ¶¶ 47, 122. These late-night calls and last-minute shift changes heightened Plaintiff's anxiety and negatively impacted her quality of sleep. *Id.* ¶ 49. Defendant Hernandez continued to assign Plaintiff to Bakery Duty despite Plaintiff's consistent reminders that Bakery Duty was not within her Manager-in-Training responsibilities, *id.* ¶¶ 33, 51, 64, and requests "to be scheduled for more favorable assignments and shifts that were afforded to Hispanic employees at Defendant MOM's Organic," *id.* ¶ 87. Additionally, Defendant Hernandez ignored Plaintiff's complaints that the tasks involved worsened her wrist injury, *id.* ¶ 39, 64, resulting in two separate visits to urgent care at which medical staff told Plaintiff to stop working in the bakery if she wanted her wrist to heal properly, *id.* ¶¶ 40, 63. Though Plaintiff provided Defendant Hernandez with a note to this effect from urgent care staff, Defendant Hernandez continued to assign her there regardless. *Id.* ¶¶ 40-41.

Beginning in July 2019, *id.* ¶ 55, and continuing through January 2020, *id.* ¶ 114, Defendant Hernandez regularly criticized Plaintiff's job performance, stating that she had "changed" in a negative way following her father's death, *id.* ¶¶ 43, 72, and that she needed to be "better," *id.* ¶¶ 55, 72, more "reliable," and more "consistent," *id.* ¶ 101. *See also id.* ¶¶ 71, 113. Defendant Hernandez

3

allegedly did not criticize Hispanic employees similarly. *Id.* ¶¶ 45, 73, 75. Throughout this same period, Defendant Hernandez also regularly suggested that Plaintiff's job was at risk. *Id.* ¶¶ 55, 81, 101. According to Plaintiff, Defendant Hernandez did not make similar threats to Hispanic employees, even if they performed poorly. *Id.* ¶¶ 58, 102. Defendant Hernandez's criticisms and threats of discipline occurred on a weekly basis, *id.* ¶¶ 71, 113, despite Plaintiff's belief that she was successfully performing her work responsibilities, *id.* ¶¶ 18, 57, 76.

In September 2019, Plaintiff's therapist diagnosed her with Post-Traumatic Stress Disorder (PTSD). *Id.* ¶ 69. Plaintiff informed Defendant Hernandez of her diagnosis. *Id.* ¶ 70. That same month, Plaintiff "objected to Defendant Hernandez's aggressive reprimands and harsh criticism and complained that she felt she was being held to a higher standard than other employees at Defendant MOM's Organic—especially Hispanic employees." *Id.* ¶ 78. She also continued to "request[] to be scheduled for more favorable assignments and shifts that were afforded to Hispanic employees." *Id.* ¶ 87. *See also id.* ¶ 112.

Plaintiff also reported Defendant Hernandez's unfair treatment to Manager-in-Training Josh Newman, Manager-in-Training Alison Halley, and Assistant General Manager Brian Burns. *Id.* ¶ 83. Specifically, Plaintiff reported that she should not be assigned to Bakery Duty given her Manager-in-Training status and that Defendant Hernandez assigned more favorable responsibilities to lower-level Hispanic employees with less tenure. *Id.* ¶ 84. However, all three parties responded that they could not do anything because Defendant Hernandez had the final say in all matters at the store. *Id*. ¶ 85.

By November 2019, Defendant's conduct had taken such a toll on Plaintiff's mental health that Plaintiff's therapist advised her to take time off. *Id.* ¶ 89. Plaintiff provided Defendant Hernandez with a note from her therapist supporting her request for four days of medical leave, which

Defendants granted.  *Id.* ¶ 90.  However, when Plaintiff returned, Defendant Hernandez's treatment of Plaintiff worsened.  *Id.* ¶ 91.  Defendant Hernandez continued to erratically schedule Plaintiff to undesirable shifts, often requiring Plaintiff to stay late and work longer than her scheduled shift.  *Id.* ¶¶ 92-93.

In mid-January 2020, Defendant Hernandez told Plaintiff that her performance had not improved and that if it did not improve within ninety days, MOM's Organic would fire or demote her.  *Id.* ¶¶ 114, 117.  Defendant Hernandez, alternatively, gave Plaintiff the opportunity to step down to a lower-level, lower-paying role voluntarily.  *Id.* ¶¶ 116, 118.  After receiving this critique, Plaintiff requested feedback from Mr. Newman, a Manager-in-Training who had been working for Defendant MOM's Organic for many years.  *Id.* ¶ 120.  Plaintiff specifically asked if she could be more "consistent" or "reliable," as those were the terms Defendant Hernandez often used when criticizing Plaintiff's performance.  *Id.* ¶ 121.  In response, Mr. Newman "insisted" that Plaintiff was doing a "great job."  *Id.*  Over the next month, Defendant Hernandez continued to call Plaintiff "at least two to three times per week" in the middle of the night to cover unscheduled Bakery Duty shifts.  *Id.* ¶ 122.  On February 18, 2020, Plaintiff gave her two-weeks' notice to Assistant General Manager Burns, stating that Defendant Hernandez was forcing her out.  *Id.* ¶ 125.

Plaintiff alleges that Defendants treated her poorly because of her race as a white, non-Hispanic person.  Specifically, Plaintiff alleges that had she been Hispanic, Defendant Hernandez would not have "disciplined" her, *id.* ¶ 119, and, instead, would have informed her about her right to take bereavement leave, *id.* ¶ 27, assigned her more favorable shifts, *id.* ¶¶ 42, 95, and been more sympathetic to her personal struggles, *id.* ¶¶ 42, 70.  Plaintiff also alleges that Defendant Hernandez treated Hispanic employees more favorably than non-Hispanic employees, *id.* ¶ 19, was more friendly

and lenient in her interactions with them, *id.* ¶ 73, criticized them less frequently, *id.* ¶¶ 20, 75, held

them to a lower standard when it came to discipline, *id.* ¶¶ 21, 73, assigned them more favorable shifts

and responsibilities, *id.* ¶¶ 21, 67, 122, offered them greater compassion and support in the face of

personal or health challenges, *id.* ¶¶ 26, 45, 46, assigned them to less physically taxing

responsibilities, *id.* ¶¶ 41, 67, threatened their jobs less frequently, *id.* ¶¶ 58, 102, promptly informed

them of the availability of bereavement leave, *id.* ¶ 98, and granted them a more consistent work

schedule, *id.* ¶ 104.  Finally, Plaintiff alleges that Defendant Hernandez never: assigned Hispanic

Managers-in-Training to Bakery Duty, *id.* ¶ 31; required Hispanic employees to work Bakery Duty

without prior notice; or called Hispanic employees in the middle of the night, *id.* ¶ 50.

On February 9, 2024, Plaintiff filed a Complaint against Defendant Hernandez and Defendant

MOM's Organic alleging race discrimination, retaliation, and hostile work environment in violation

of 42 U.S.C. § 1981.  ECF No. 1.  In response, Defendants timely filed a Motion to Dismiss on May

3, 2024, which is now before the Court.  ECF No. 15.  The Motion has been fully briefed. ECF Nos.

16, 27, 28.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a party may move to dismiss a case where there is

"failure to state a claim upon which relief can be granted."  To survive a motion to dismiss under

12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  For the purposes of a motion to dismiss, the Court should accept as true the well-pled

allegations of the complaint, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and construe all factual

allegations in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).

A court should not grant a motion to dismiss unless, after accepting the well-pled allegations as true and drawing all reasonable factual inferences in the plaintiff's favor, "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)). However, pleadings that present "no more than conclusions" will not be "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Section 1981 "prohibits discrimination in employment on the basis of race." *Evans v. Md.-Natl. Cap. Parks & Plan. Comm'n*, No. CV MJM-19-2651, 2023 WL 3328002, at *17 (D. Md. Mar. 31, 2023) (quoting *Yashenko v. Harrah's N.C. Casino Co*., 446 F.3d 541, 551-52 (4th Cir. 2006)), *aff'd per curiam*, No. 23-1475, 2023 WL 8064797 (4th Cir. Nov. 21, 2023).  Under § 1981, a plaintiff may bring "race-based disparate treatment and/or hostile environment claims and claims for retaliatory actions taken against a plaintiff who opposed such policies and practices." *Proa v. NRT Mid A., Inc.*, 618 F. Supp. 2d 447, 461 (D. Md. 2009) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008)), *aff'd per curiam*, 398 Fed. Appx. 882 (4th Cir. 2010) (unpublished).  Though § 1981 claims and Title VII claims rest on "distinct legal theories," courts apply the same analysis to employment-based claims under both statutes. *Id.* (citing *Gairola v. Commonwealth of Va. Dept. of Gen. Servs*., 753 F.2d 1281, 1285 (4th Cir.1985)).  *See also Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir.2001) (explaining that the elements of a hostile work environment claim "are the same under either § 1981 or Title VII"); *Bryant v. Bell A. Md., Inc*., 288 F.3d 124, 133 n.7 (4th Cir.

2002) ("The required elements of a prima facie case of employment discrimination are the same under Title VII and Section 1981."); *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (explaining that a retaliation claim under § 1981 has the same elements as a retaliation claim under Title VII).

Plaintiff alleges that Defendants violated § 1981 by discriminating against her based on her race, creating a hostile work environment, and retaliating against her for engaging in protected activity. ECF No. 1 ¶ 1. Plaintiff's race discrimination and hostile work environment claims survive Defendants' Motion to Dismiss, while her retaliation claim does not. Because the hostile work environment analysis is integral to each of Plaintiff's claims, the Court will first address Plaintiff's hostile work environment allegations before moving onto her race discrimination and retaliation claims.

## I.    Hostile Work Environment (Count III)

"A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)). A hostile work environment claim "may involve incidents that occur over the course of 'a series of days or perhaps years.'" *Taylor v. Go-Getters, Inc*, No. CV ELH-20-3624, 2021 WL 5840956, at *12 (D. Md. Dec. 9, 2021) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). Further, as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117.

8

To state a plausible hostile work environment claim, Plaintiff "must allege 'that there is (1) unwelcome conduct; (2) that is based on the plaintiff's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Decoster v. Becerra*, 119 F.4th 332, 337 (4th Cir. 2024) (quoting *Boyer-Liberto*, 786 F.3d at 277). Defendants allege that Plaintiff has failed to sufficiently plead the second and third elements of a hostile work environment claim. ECF No. 16, at 33. The Court will address the more substantive question of element three before addressing element two.

### A. Sufficiently Severe or Pervasive

"The severe or pervasive element has both a subjective and objective component," requiring a plaintiff to show that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Evans v. Intl. Paper Co*., 936 F.3d 183, 192 (4th Cir. 2019) (quoting *E.E.O.C. v. Cent. Wholesalers, Inc.,* 573 F.3d 167, 175 (5th Cir. 2009)). *See also Guessous v. Fairview Prop. Investments*, LLC, 828 F.3d 208, 227 (4th Cir. 2016) ("The question is whether [a plaintiff] reasonably perceived the work environment to be abusive.") (citation and internal quotation marks omitted). To understand whether alleged harassment is "objectively 'severe or pervasive,'" courts "look 'at all the circumstances.'" *Evans*, 936 F.3d at 192 (quoting *E.E.O.C. v. Sunbelt Rentals, Inc*., 521 F.3d 306, 315 (4th Cir. 2008)). This includes assessing the "frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance." *Sunbelt Rentals*, 521 F.3d at 315 (quoting *Harris*, 510 U.S. at 23). "[I]ncidents that would objectively give rise to bruised or wounded feelings," rude treatment from coworkers, callous behavior by one's

superiors, or a routine difference of opinion and personality conflict with one's supervisor are not sufficient to demonstrate severe or pervasive harassing conduct. *Evans*, 936 F.3d at 192 (quoting *Sunbelt Rentals*, 521 F.3d at 315). In support of the "severe or pervasive" element of a hostile work environment claim, "a plaintiff may, but is not required to, establish that the environment is 'psychologically injurious.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 22). Additionally, "in measuring the severity of harassing conduct, the status of the harasser may be a significant factor." *Taylor*, 2021 WL 5840956, at *12 (quoting *Boyer-Liberto*, 786 F.3d at 278).

Defendants do not contest that Plaintiff has adequately alleged that she subjectively perceived her work environment to be hostile. *See* ECF No. 16 at 35. Thus, the focus is on whether the environment was objectively hostile or abusive. *See Evans*, 936 F.3d at 192. Courts in this Circuit have consistently dismissed hostile work environment claims when the plaintiff's primary allegations focus on verbal criticism from their supervisor. *See, e.g.*, *Wooten v. U. of Maryland, Baltimore*, No. ELH-23-2272, 2024 WL 2155063, at *20 (D. Md. May 13, 2024) (dismissing hostile work environment claim where plaintiff alleged, among other things, that supervisor "constantly criticized" plaintiff and "forced [plaintiff] to work during the weekend"); *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (per curiam) (stating that allegations of a supervisor mockingly yelling at plaintiff, "repeatedly harping on a mistake," and "unfairly scrutinizing and criticizing" plaintiff, fall "far short of being severe or pervasive enough to establish an abusive environment") (internal alterations omitted); *Pounds v. State of Md. Judiciary*, No. SAG-20-3379, 2021 WL 1751154, at *4 (D. Md. May 4, 2021) (dismissing a hostile work environment claim where plaintiff alleged, among other things, that supervisor communicated with plaintiff on a daily basis "in a demeaning and belittling way," referred to plaintiff as "you people," and directed "subordinates to closely scrutinize

and target Plaintiff") (internal quotation marks omitted); *Chand v. Braithwaite*, No. 3:20-1578, 2020 WL 9209284, at *2 (D.S.C. Sept. 1, 2020) (citing cases and dismissing a hostile work environment claim when plaintiff's supervisor allegedly intimidated plaintiff, provided plaintiff with negative performance evaluations, and denied plaintiff various workplace privileges); *Vincent v. MedStar S. Md. Hosp. Ctr.*, No. TDC-16-1438, 2017 WL 3668756, at *9-10 (D. Md. Aug. 22, 2017) (finding plaintiff failed to allege hostile work environment where supervisor yelled at employee, called her "stupid," refused to communicate with her, and restricted her access to the computer system).

While some of the above examples resemble aspects of Plaintiff's allegations, Plaintiff alleges additional facts that support a plausible inference that her claim satisfies the "severe or pervasive" element. To begin, the frequency and source of the harassment Plaintiff describes is significant. Plaintiff alleges that she was criticized and threatened with discipline weekly, ECF No. 1 ¶ 71, forced to work longer than her scheduled shift "at least once per week," *id.* ¶ 122, and called in the "middle of the night" to pick up a last-minute 4:00 A.M. morning shift "at least two to three times per week," *id.* ¶ 122. Additionally, her supervisor, who held the "most senior position" and had the "highest decision-making authority" at Plaintiff's workplace was responsible for the harassing behavior. *Id.* ¶ 17. Plaintiff has also alleged that Defendant Hernandez not only assigned Plaintiff to duties—namely, Bakery Duty—that were inconsistent with her job title, but that these specific tasks exacerbated an existing injury of which Defendant Hernandez was aware, leading Plaintiff to visit urgent care two separate times. *Id.* ¶¶ 40, 63. Lastly, Plaintiff has alleged that the work environment was "psychologically injurious," *see Boyer-Liberto*, 786 F.3d at 277, noting that the inconsistent scheduling and regular "middle of the night" phone calls caused her "extreme anxiety," and a "bad

quality of sleep," which "triggered her PTSD symptoms," ECF No. 1 ¶¶ 47, 49, and that her therapist recommended that she take time off work due to the impact on her mental wellbeing, *id.* ¶ 89.

Defendants argue that Plaintiff "alleges only offhand comments and isolated incidents," ECF No. 16 at 36 (citation and internal quotation marks omitted), and that there is no basis to "indicate that a reasonable person would find [the alleged] conditions objectively hostile or abusive," *id.* at 35 (citation and internal quotation marks omitted). However, the record includes sufficient allegations to plausibly contradict that claim. Looking at "all the circumstances," *Evans*, 936 F.3d at 192, the facts of the Complaint suggest that Plaintiff's allegations are more than mere "grievances about the management style or decisions of those who supervised her," *Wooten*, 2024 WL 2155063, at *20, and go beyond the "rolling with the punches" inherent in workplace life, *Sunbelt Rentals*, 521 F.3d at 315. Thus, at this stage, Plaintiff has alleged facts that plausibly support the inference that the harassment she experienced was severe or pervasive.

### B. Based on Plaintiff's Race

The Court may "infer that harassment is based on race when the plaintiff suffered harassment more often than others of different races." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 409 (4th Cir. 2022) (citing *Sunbelt Rentals*, 521 F.3d at 318). Plaintiff has alleged that Defendants treated her differently than her Hispanic coworkers at MOM's Organic. Plaintiff's Complaint avers that Defendant Hernandez was more friendly and lenient in her interactions with Hispanic employees, ECF No. 1 ¶ 73, criticized them less frequently, *id.* ¶ 20, held them to a lower standard when it came to discipline, *id.* ¶¶ 21, 73, assigned them more favorable shifts and responsibilities that were less physically taxing, *id.* ¶¶ 41, 67, threatened their jobs less frequently, *id.* ¶¶ 58, 102, and granted them a more consistent work schedule, *id.* ¶ 104. More specifically, Plaintiff alleges that Defendant

Hernandez never assigned Hispanic Managers-in-Training to Bakery Duty, *id.* ¶ 31, required Hispanic employees to work Bakery Duty without prior notice, or called Hispanic employees in the middle of the night, *id.* ¶ 50.

As Plaintiff has alleged that she experienced harassment that her Hispanic coworkers did not, the Court may, at this stage, plausibly infer that the harassment is based on race, thereby satisfying the second element of Plaintiff's hostile work environment claim. *See Lee v. Mattis*, No. PX-17-2836, 2018 WL 3439261, at *10 (D. Md. July 17, 2018) (finding that specific allegations of dissimilar treatment compared with colleagues outside the plaintiff's protected class "support[ed] a reasonable inference that [the employer's] treatment of [the plaintiff] was racially motivated"). Accordingly, Plaintiff has sufficiently stated a hostile work environment claim as to both Defendant Hernandez and Defendant MOM's Organic, and Defendants' Motion to Dismiss as to Count II is denied.

## II.    Race Discrimination

To establish a *prima facie* claim of race discrimination based on disparate treatment under § 1981, "a plaintiff must present facts demonstrating that: (1) the plaintiff is a member of a protected class; (2) the plaintiff's job performance was satisfactory; (3) the plaintiff was subjected to an adverse employment action; and (4) similarly situated employees outside the protected class received more favorable treatment." *Stovall v. H&S Bakery*, No. TDC-22-0564, 2023 WL 3803669, at *2 (D. Md. June 1, 2023) (citing *White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004)).[2] At the

---

[2] Defendants argue that Plaintiff should be held to a heightened pleading standard because she is alleging a "reverse discrimination" claim. ECF No. 16 at 15 n.3. The Fourth Circuit has not directly addressed whether a heightened pleading standard should apply to reverse discrimination claims. *See Hillman v. Austin*, No. 220CV03225DCNMGB, 2022 WL 4481418, at *4 (D.S.C. Sept. 27, 2022). Additionally, the Supreme Court recently granted certiorari in *Ames v. OH Dept. of Youth Services* to determine what pleading standard is required in a reverse discrimination case. No. 23-1039, 2024 WL 4394128 (U.S. Oct. 4, 2024). Given the unresolved nature of the question, the Court will not

motion to dismiss stage, "a plaintiff need only 'offer facts that plausibly support inferences that'" these elements are satisfied. *Campbell v. Beckton, Dickinson & Co*., No. ELH-22-3043, 2024 WL 1299354, at * 18 (D. Md. Mar. 27, 2024) (quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022)). Defendants argue that Plaintiff has failed to allege facts demonstrating that (1) her job performance was satisfactory, (2) she suffered an adverse employment action, and (3) Defendants treated similarly situated employees outside of her protected class more favorably. ECF No. 16 at 13. The Court will address each of the three elements, but will begin with the most substantive question of whether Plaintiff has alleged an adverse employment action.

### A. Adverse Employment Action

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Wa. Homes, Inc*., 487 F.3d 208, 219 (4th Cir. 2007) (alteration in original) (quoting *James v. Booz-Allen & Hamilton, Inc*., 368 F.3d 371, 375 (4th Cir. 2004)). Defendants not only argue that Plaintiff failed to allege an adverse action, but also that, to the extent she attempts to do so, many of her allegations are time-barred. ECF No. 16 at 19-21.

### 1. Timeliness

Employment discrimination claims under § 1981 are governed by a four-year federal statute of limitations. *White v. BFI Waste Services, LLC*, 375 F.3d 288, 291-92 (4th Cir. 2004). As applied to adverse employment actions in the discrimination context, "courts typically consider alleged adverse employment actions on their own," as discrete acts, "rather than the circumstances as a whole." *Aly v. Yellen*, No. 8:23-CV-01699-AAQ, 2024 WL 2053492, at *6 (D. Md. May 8, 2024)

---

apply the heightened pleading standard here.

(citing *Staggers v. Becerra*, No. ELH-21-231, 2021 WL 5989212, at *15-19 (D. Md. Dec. 17, 2021)).

Accordingly, a plaintiff cannot recover "for discrete acts of discrimination or retaliation that occur

outside the statutory time period." *Gilliam v. S.C. Dept. Of Juv. J.*, 474 F.3d 134, 141 n.8 (4th Cir.

2007) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)).  "Simply put,

'discrete discriminatory acts are not actionable if time barred, even when they are related to acts

alleged in timely filed charges.'"  *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 220 (4th Cir.

2007) (quoting *Morgan*, 536 U.S. at 102).  Plaintiff filed her Complaint on February 8, 2024.  ECF

No. 1.  As such, she "can only file a charge to cover discrete acts that 'occurred' within the appropriate

time period," or, after February 8, 2020.  *Id.* (quoting *Morgan*, 536 U.S. at 114).  Discriminatory

actions that occurred prior to February 8, 2020, are outside the statutory period, and, therefore, time-

barred.[3]  Plaintiff argues in her briefing that a discrimination claim relying on an adverse action that

occurred outside the statutory period is timely if the action was part of a pattern of discriminatory

treatment.  ECF No. 27 at 11.  However, this argument fails because Plaintiff makes this claim in

reference to the continuing-violation doctrine, which courts use to assess hostile work environment

claims rather than allegations of discrete discriminatory adverse actions.  *See Guessous v. Fairview

Prop. Investments*, LLC, 828 F.3d 208, 221-22 (4th Cir. 2016).

Plaintiff argues that her reassignment to Bakery Duty constitutes an adverse employment

action.  ECF No. 27 at 10.  However, the Court need not decide whether this is the case, as the

---

[3] Typically, arguments that claims should be dismissed for being time-barred are affirmative defenses inappropriate for consideration at the motion to dismiss stage. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  Such a defense may be reached at the motion to dismiss stage "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.* Defendants' argument that several of Plaintiff's alleged adverse employment actions are time-barred meets this standard.

reassignment—which occurred in the summer of 2019, ECF No. 1 ¶ 31—is a discrete employment action that took place beyond the statutory period and is, therefore, time-barred.

Plaintiff also alleges that she was constructively discharged when she resigned.  ECF No. 1 at 23 ("Plaintiff is Constructively Discharged").  "[C]onstructive discharge is an adverse action which can fulfill that element of [a] discrimination or retaliation claim[]."  *Lloyd v. Riveredge Operating Co., LLC*, No. GLR-20-3162, 2021 WL 2550495, at *4 (D. Md. June 21, 2021).  *See also Ofoche v. Apogee Med. Group, Virginia, P.C.*, 815 Fed. Appx. 690 (4th Cir. 2020) (unpublished) (considering a claim of constructive discharge in the context of an adverse employment action).  In a constructive discharge claim, "the employee's resignation is the culmination of the intolerable discriminatory conduct of the employer, such that the relevant limitation period starts with the employee's resignation, not the last act of the employer."  *Guessous,* 828 F.3d at 223.  Plaintiff's resignation occurred within the statutory window on February 18, 2020.  ECF No. 1 ¶ 123.  As such, Plaintiff's allegation that she was constructively discharged is not time-barred and, if plausibly alleged, will satisfy the adverse employment action element of her racial discrimination claim.

### 2.  Constructive Discharge

Plaintiff premises her constructive discharge allegation on her allegations of a hostile work environment.  ECF No. 1 ¶ 123 ("Plaintiff felt that she could no longer tolerate the discrimination and hostility by Defendant Hernandez and felt compelled to resign.").  "To state a claim for constructive discharge premised on a hostile work environment in this circuit, [a plaintiff] must show 'something more than the showing required for a hostile work environment claim.'"  *Decoster*, 119 F.4th at 339 (quoting *Evans*, 936 F.3d at 193).  Specifically, a plaintiff must plead facts indicating "that because of her employer's conduct, she 'was subjected to circumstances so intolerable that a reasonable person

16

would resign,'" *id.* at 339-40 (quoting *E.E.O.C. v. Consol Energy, Inc.*, 860 F.3d 131, 144-145 (4th Cir. 2017), "and that she actually resigned," *id.* at 340 (quoting *Evans*, 936 F.3d at 193). Given that Plaintiff has stated a claim for hostile work environment, the remaining question is whether Plaintiff has plausibly pled intolerability.

Intolerability is assessed using "the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign . . . that is, whether [s]he would have had no choice but to resign." *Decoster*, 119 F.4th at 340 (quoting *Evans*, 936 F.3d at 193). In assessing intolerability, "the more continuous the conduct, the more likely it will establish the required intolerability." *Evans*, 936 F.3d at 193. "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994). Additionally, criticism from one's employer coupled with an isolated instance of being made to work with an injury is also insufficient to establish intolerability. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (affirming the dismissal of claim for constructive discharge where plaintiff alleged that her supervisors yelled at her, gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back).

Defendants argue that Plaintiff only alleges "critiques of Plaintiff's performance, inconsistent scheduling, and unpopular shift assignments" in support of her constructive discharge claim. ECF No. 28 at 6. Were that the case, Defendants would be correct that Plaintiff would not have sufficiently alleged constructive discharge. However, Plaintiff alleges more. In addition to her allegations of weekly criticisms and threats of discipline, ECF No. 1 ¶ 71, Plaintiff alleges that Defendant Hernandez continually assigned her to duties that were both outside her work description and

physically injurious to her when Defendant Hernandez was aware that (1) Plaintiff's wrist was injured, (2) Bakery Duty exacerbated the injury, and (3) urgent care staff had advised Plaintiff to temporarily take time off Bakery Duty. *Id.* ¶¶ 39, 40, 51. This conduct surpasses that described in *Williams v. Giant Food Inc.*, wherein the plaintiff was "once required . . . to work with an injured back." 370 F.3d at 434. Most significantly, Defendant Hernandez called Plaintiff "at random times in the middle of the night to cover unscheduled Bakery Duty shifts [at 4:00 A.M. the next morning] at least two to three times per week." ECF No. 1 ¶¶ 47, 122. This behavior—which disrupted Plaintiff's sleep and contributed to an "overall sense of instability," *id.* ¶ 49—began in the summer of 2019, *id.* ¶ 47, and continued throughout February 2020, *id.* ¶ 122—a period of approximately seven months. These allegations support a plausible inference that a reasonable individual subjected to this treatment over a period of several months could find the conditions intolerable and feel compelled to resign. *See Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 232 (D. Md. 2022). Thus, Plaintiff has adequately alleged an adverse employment action for the purposes of her racial discrimination claim against Defendants Hernandez and MOM's Organic.

### B. Satisfactory Job Performance

Defendants argue that Plaintiff offers no facts showing that she was performing her work to the satisfaction of her employer at the time of her constructive discharge. ECF No. 16 at 16. Defendants are correct that Plaintiff's "conclusory assertions about her performance," *id.*—for instance, Plaintiff's claim that "Plaintiff's performance was above average and above satisfactory throughout her time working for Defendants," ECF No. 1 ¶ 18—are insufficient to allege satisfactory job performance. *See Kiver v. Fed. Bus. Counsel, Inc.*, No. 23-3398-BAH, 2024 WL 3424059 at *4 (D. Md. July 16, 2024). However, Plaintiff also alleges that after Defendant Hernandez told Plaintiff

that she would be fired or demoted if she did not improve in January 2020, Plaintiff asked a more experienced Manager-in-Training for feedback on her work. ECF No. 1 ¶ 120. Plaintiff alleges that she specifically asked about what she could do to be more "consistent," or "reliable," which were traits that Defendant Hernandez typically criticized. *Id.* ¶ 121. In response, Manager Newman "insisted that Plaintiff was doing a 'great job.'" *Id.* As such, Plaintiff has alleged that shortly before the relevant adverse action—her alleged constructive discharge in February 2020—Plaintiff was assured by a longer-tenured Manager-in-Training, after explicitly seeking his opinion on her reliability and consistency, that she was performing her job well. Taking all the well-pled facts as true and drawing all reasonable factual inferences in Plaintiff's favor, Plaintiff has plausibly alleged that she was satisfactorily performing her job responsibilities at the time of her constructive discharge.

Defendants also argue that, by alleging that Defendant Hernandez consistently criticized Plaintiff throughout her tenure at MOM's Organic, Plaintiff has "undercut her narrative" of satisfactory performance. ECF No. 16 at 17. This argument is weakened by the fact that the alleged critiques came directly from Plaintiff's accused harasser. Additionally, the cases Defendants cite in support of their argument do not apply to this situation, but rather involve distinct factual circumstances. In *Rios v. City of Raleigh*, the plaintiff's complaint described several mistakes the plaintiff made at work, such as filling in a form incorrectly, filing reports late, and violating company policy. No. 5:19-CV-00532-M, 2020 WL 5603923, at *11 (E.D.N.C. Sept. 18, 2020). Here, unlike in *Rios*, the Complaint includes no specific examples of Plaintiff making a mistake at work or performing below expectations. In *Mason v. Montgomery County*, this Court noted that the plaintiff made several "threadbare and conclusory" allegations, but also that the plaintiff made some "specific allegations," such as stating that he received letters of appreciation. No. PWG–14–3718, 2015 WL

3891808, at *5 (D. Md. June 23, 2015).  This Court held that those specific allegations were insufficient to state a claim because the plaintiff "fail[ed] to allege a timeframe" in which they occurred, hindering the Court's ability to infer that the plaintiff's performance was satisfactory at the time of the adverse action.  *Id.*  In this case, Plaintiff's allegations concerning Manager Newman's comments constitute specific allegations, and, while the Complaint does not state exactly when Plaintiff spoke with Manager-in-Training Newman, the Court can reasonably infer that Plaintiff sought Manager-in-Training Newman's feedback following her January 2020 disciplinary discussion with Defendant Hernandez.  ECF No. 1 ¶ 120 ("Desperate to try and save her job . . . Plaintiff requested feedback from Manager Newman.").  As such, Plaintiff's Complaint includes specific allegations that she was meeting her employer's expectations at the time of her constructive discharge.

### C.  Similarly Situated Comparators

Defendants assert that Plaintiff has failed to sufficiently plead discrimination because she has not identified similarly situated comparators outside of her protected class who received better treatment.  ECF No. 16 at 24.  "Employees are similarly situated when they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  *Hammoud*, 618 F. Supp. 3d at 234 (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)).  However, at the motion to dismiss stage, "an employment discrimination plaintiff 'is not required as a matter of law to point to a similarly situated . . . comparator in order to succeed on a . . . discrimination claim.'"  *Id.* (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)).  "Moreover, questions about the suitability of comparators 'are inherently fact-based and should not be resolved at the pleadings stage where

[Plaintiff] has alleged enough facts to permit a plausible inference that' she experienced discrimination." *Id.* (quoting *Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty.*, No. TDC-18-3821, 2019 WL 2929025, at *15 (D. Md. July 8, 2019)).

Plaintiff has alleged that "Defendant Hernandez never assigned Hispanic Mangers-in-Training to Bakery Duty," ECF No. 1 ¶ 31, and "never called Hispanic employees in the middle of the night and demanded that they go work Bakery Duty without any prior notice," *id.* ¶ 50. More generally, she has alleged that Defendant Hernandez—who controlled the hiring, firing, disciplining, promoting, and assigning work shifts to employees, *id.* ¶ 17—was less critical of Hispanic employees, threatened their jobs less frequently, and assigned them more favorable work schedules, *id.* ¶¶ 37, 58, 75. Plaintiff has offered facts that plausibly support the inference that similarly situated Hispanic employees received more favorable treatment. Accordingly, Plaintiff has sufficiently stated a claim for race discrimination as to both Defendant Hernandez and Defendant MOM's Organic. Defendants' Motion to Dismiss as to Count I is denied.

### D. Defendant Hernandez's Individual Liability

Defendants argue that Plaintiff's allegations regarding Defendant Hernandez's liability under § 1981 are no more than "a naked attempt to embarrass and harass Ms. Hernandez." ECF No. 16 at 9. However, "[u]nlike Title VII, Section 1981 allows for individual liability." *Brown v. Bratton*, No. CV ELH-19-1450, 2020 WL 886142, at *13 (D. Md. Feb. 21, 2020). Individuals are liable under § 1981 "when they 'intentionally cause [an employer] to infringe the rights secured by' section 1981" *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 483 (D. Md. 2002) (quoting *Tillman v. Wheaton–Haven Recreation Ass'n*, 517 F.2d 1141, 1145 (4th Cir. 1975)), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003). "Similarly, supervisors are liable under § 1981 when they

'authorize, direct or participate in' a discriminatory act." *Brown*, 2020 WL 886142, at \*13 (quoting *Atkins v. Winchester Homes*, No. CCB-06-278, 2007 WL 269083, at \*9 (D. Md. Jan. 17, 2007)).

As discussed above, Plaintiff has adequately alleged claims of race discrimination and a hostile work environment, both of which rely exclusively on Defendant Hernandez's alleged conduct. Additionally, § 1981 plaintiffs regularly bring claims against both their employer and the individuals who engaged in the discriminatory acts. *See, e.g.*, *Carson*, 187 F. Supp. 2d. at 481; *Boyer-Liberto*, 786 F.3d at 264; *Gates v. Waffle H. Corp*., No. 4:18-CV-00140-BO, 2019 WL 613555, at \*3 (E.D.N.C. Jan. 9, 2019), *report and recommendation adopted*, No. 4:18-CV-140-BO, 2019 WL 615364 (E.D.N.C. Feb. 13, 2019); *Atkins*, 2007 WL 269083 at \*1. Plaintiff has done no differently here. Lastly, Defendants do not contest that Defendant Hernandez's conduct is imputable to Defendant MOM's Organic. ECF No. 16 at 33. As such, both Defendants are proper at this stage.

## III.    Retaliation (Count II)

To state a claim for retaliation under § 1981, a plaintiff must allege facts indicating "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection exist[s] between the protected activity and the adverse employment action." *Jenkins v. Gaylord Ent. Co*., 840 F. Supp. 2d 873, 880 (D. Md. 2012) (quoting *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 675 (D. Md. 2011)). Defendants argue that Plaintiff has failed to allege all three elements of a retaliation claim.

### A.  Protected Activity

"Protected activity" includes opposition to an unlawful employment practice, or an employment practice an employee believes to be unlawful. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416-417 (4th Cir. 2015). The Fourth Circuit has adopted an "expansive view of what constitutes

oppositional conduct," *id.* at 417, holding that it includes "informal grievance procedures," such as "voicing one's opinions in order to bring attention to an employer's discriminatory activities," *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998), and "complain[ing] to [one's] superiors about suspected violations," *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003).

Plaintiff has sufficiently alleged protected activity at this stage.  She alleges that she "objected to Defendant Hernandez's aggressive reprimands and harsh criticism and complained that she felt she was being held to a higher standard than other employees at Defendant MOM's Organic—especially Hispanic employees."  ECF No. 1 ¶ 78.  Plaintiff also avers that she "repeatedly pointed out [to Defendant Hernandez] . . . that several lower-level employees with less tenure and experience were assigned more favorable responsibilities. These employees were Hispanic." *Id.* ¶ 79.  Plaintiff alleges that she made these same complaints to two other Managers-in-Training and an Assistant General Manager. *Id.* ¶¶ 83, 84 ("Plaintiff reported that Defendant Hernandez should never have assigned her to work the Bakery Duty in the first place given her status as Manager-in-Training and reported that several lower-level employees with less tenure and experience were assigned more favorable responsibilities. These employees were Hispanic.").

Defendants argue that Plaintiff's specific phrasing—separating the sentence "These employees were Hispanic." from the sentence outlining the details of Plaintiff's protestations—calls into question whether Plaintiff actually complained that she was experiencing disparate treatment based on her race.  ECF No. 16 at 11.  However, at the motion to dismiss stage, the Court will not dismiss a claim based on a parsing of Plaintiff's syntax.  Given the contents of the Complaint, the Court can plausibly infer that Plaintiff complained to Defendant Hernandez and to other MOM's

Organic employees that she was experiencing disparate treatment because of her race. Accordingly, Plaintiff has sufficiently alleged protected activity at this stage. *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) ("[W]hen an employee communicates to her employers a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity.") (quoting *Crawford v. Metro. Gov't of Nashville and Davidson Cty., Tenn*., 555 U.S. 271, 276 (2009)); *see also Goldstein v. U. of Maryland*, No. CCB-18-2376, 2019 WL 4467035, at *12 (D. Md. Sept. 17, 2019) (finding that a plaintiff alleged protected activity by alleging that she told her harasser to stop and complained to a higher-level employee).

### B. Adverse Employment Action

The Complaint alleges that after Plaintiff's complaints in September of 2019, Defendant Hernandez became "visibly irritated and increasingly angered by [them]." ECF No. 1 ¶ 80. The Court need not assess whether this escalation—and the discrete acts that it entailed—constituted an adverse action. Even though "what qualifies as an adverse employment action in the retaliation context is less onerous than in the discrimination context," *Aly v. Yellen*, No. 8:23-CV-01699-AAQ, 2024 WL 2053492, at *7 (D. Md. May 8, 2024), a plaintiff still cannot recover "for discrete acts of . . . retaliation that occur outside the statutory time period," *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). It is clear from the face of the Complaint that the actions that accompanied Defendant Hernandez's escalation of her behavior—including, but not limited to, assigning Plaintiff to a 12-hour shift, ECF No. 1 ¶ 92, asserting that Plaintiff needed to improve, and emphasizing that Plaintiff's job was at risk, *id.*, ¶ 81—occurred in 2019, and thus, are time-barred for the purposes of a retaliation claim.

However, both constructive discharge and a hostile work environment may be considered adverse actions for the purposes of a retaliation claim. *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 216 (4th Cir. 2022) (discussing the claim of retaliatory hostile work environment); *Lloyd v. Riveredge Operating Co., LLC*, No. GLR-20-3162, 2021 WL 2550495, at *4 (D. Md. June 21, 2021) ("[C]onstructive discharge is an adverse action which can fulfill that element of [a] . . . retaliation claim[].").  Since Plaintiff has adequately alleged a hostile work environment and her constructive discharge, she has also alleged an adverse action for the purposes of her retaliation claim.

### C.  Causation

Despite sufficiently pleading the other elements, Plaintiff has failed to allege that her complaints of discriminatory treatment caused her hostile work environment or her constructive discharge.  In a retaliation claim, an employee must allege "that she suffered an adverse action because she engaged in protected activity."  *Campbell v. Becton, Dickinson and Co.*, No. 1:22-CV-03043-ELH, 2024 WL 1299354, at *34 (D. Md. Mar. 27, 2024) (describing the but-for causation standard applied to retaliation claims).  *See also Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 589 U.S. 327, 331-32 (2020) (officially applying the but-for causation standard to § 1981 claims).  "Establishing a 'causal relationship' at the *prima facie* stage is not an onerous burden," *Campbell*, 2024 WL 1299354, at *34 (quoting *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 335 (4th Cir. 2018)), and "very little evidence of a causal connection is required," *id.* (quoting *Roberts v. Glenn Indus. Group, Inc*., 998 F.3d 111, 127 (4th Cir. 2021)).

Plaintiff has not alleged that her hostile work environment or constructive discharge were retaliatory because the bulk of the conduct supporting her constructive discharge and hostile work environment claims began in July 2019—two months before Plaintiff complained about disparate

treatment in September 2019. *See*, *e.g.*, *Lewis v. Potter*, No. CIV A DKC 2008-2249, 2009 WL 2168969 (D. Md. July 17, 2009) (citing *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 181 (4th Cir.1998)) ("When the alleged retaliatory conduct occurs *before* the employee engages in the protected activity, the retaliation claim necessarily fails.").  Additionally, to the extent that Plaintiff alleges that her work environment worsened in the months following her complaints, there is nothing in the Complaint indicating that this was because of her complaints. *See Gaines v. Baltimore Police Dept.*, 657 F. Supp. 3d 708, 746 (D. Md. 2023) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("[W]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").  If anything, the Complaint suggests that Defendant Hernandez escalated her behavior in response to Plaintiff taking time off, not voicing complaints of discriminatory behavior.  ECF No. 1 ¶ 91 ("When Plaintiff returned to work, the harassment and retaliation worsened.").  As such, Plaintiff's retaliation claim as to both Defendants must be dismissed.

### E.  Punitive Damages and Litigation Expenses (Count IV)

Defendants argue that Plaintiff's request for punitive damages and litigation expenses should be dismissed because there is "no freestanding cause of action for punitive damages."  ECF No. 16 at 37.  While the request is not properly pled as an independent claim, this demand is rooted in Plaintiff's § 1981 claims.  *See*, *e.g.*, *Est. of Grillo by Grillo v. Thompson*, No. GLR-21-3132, 2022 WL 3027859, at *8 (D. Md. Aug. 1, 2022) (asserting that Plaintiff's claims for punitive damages and respondeat superior were "essentially rooted in Plaintiff's negligence claims").  As such, because two of Plaintiff's § 1981 claims survive, her demand for punitive damages and litigation expenses survives.

*See In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prod. Liab. Litig.*, 300 F. Supp.3d 732, 736 n.3 (D. Md. 2018) ("A claim for punitive damages is derivative and therefore survives if the plaintiffs' underlying claims that support it survive."); *c.f. Biggs v. Eaglewood Mortg., LLC*, 582 F. Supp. 2d 707, 711 n.5 (D. Md. 2008) (finding that a claim for punitive damages does not survive when no underlying cause of action survives); *Est. of Grillo by Grillo*, 2022 WL 3027859, at *8 (holding that because plaintiff's negligence claims failed, her claims for punitive damages and respondeat superior also necessarily failed).  However, if Plaintiff fails to recover under § 1981, she will not be able to recover punitive damages.  Nonetheless, Defendants' request that the court strike this demand altogether at this stage is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 15, is granted, in part, and denied, in part.  It is GRANTED as to Plaintiff's retaliation claim (Count II).  It is DENIED as to Plaintiff's hostile work environment and race discrimination claims (Counts I, III).  Plaintiff's claim for punitive damages and litigation expenses shall be struck as an independent claim (Count IV), and treated as part of Plaintiff's Prayer for Relief.  Plaintiff shall file an Amended Complaint within fourteen days; Defendants shall file an Answer addressing the remaining counts within fourteen days thereafter.

So ordered.

Date:  December 2, 2024                                          _____/s/_____

                                                                                        Ajmel A. Qureshi
                                                                                        U.S. Magistrate Judge